**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JERVON COLEMAN,

Petitioner,

                                    Case Number: 2:09-CV-13328
                                    Honorable Judge Denise Page Hood
v.                                   United States District Court

HUGH WOLFENBARGER,

Respondent.
_____/

**ORDER AND OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Jervon Coleman, ("petitioner"), currently imprisoned in the Macomb Correctional Facility in New Haven, Michigan, seeks a writ of habeas corpus under 28 U.S.C. § 2254 (1996). In his application, the petitioner challenges his conviction for three counts of first-degree felony murder, M.C.L.A. 750.316; and one count of assault with intent to murder, M.C.L.A. 750.83. Petitioner was found guilty by a jury of the above offenses. The Michigan Court of Appeals affirmed the petitioner's conviction, although it vacated two counts of second degree murder. *People v. Coleman*, No. 278948, No. 2008 WL 4649025 (Mich. Ct. App. Oct. 21, 2008). The Michigan Supreme Court denied leave to appeal. *People v. Coleman*, 483 Mich. 977; 765 N.W. 2d 14 (2009). The petitioner has exhausted his state remedies and now seeks a writ of habeas corpus.

      The petitioner seeks a writ of habeas corpus on two alternate grounds: (1) the

petitioner contends that there is insufficient evidence to support his conviction, and (2) the petitioner contends that the trial judge should have granted his motion for directed verdict after the prosecution's opening statement. This Court will address each claim.

## I. Background

This Court adopts the Michigan Court of Appeals recitation of the facts. See *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009)(stating that state court findings of fact are presumed to be correct on habeas review):

> Defendant was prosecuted after being implicated, along with his accomplice Marcel Mills, in a triple murder and an accompanying assault. The three murder victims, Kristal Leonard, Raymond Anderson, and Lejuan Besant, died from multiple gunshot wounds. The testimony of the assault victim, Evelyn Stewart, who identified defendant and who survived by hiding in the basement of Besant's home where the criminal episode occurred, formed the chief basis of the prosecutor's case against defendant. The prosecutor proceeded under the theory that defendant acted as either a principal or an aider and abettor with respect to all of the crimes....
>
> The evidence reflected, according to Stewart's testimony, that defendant entered the home with Mills and that Mills was wearing all black clothing with a ski mask that covered his nose and mouth. Either Mills or defendant asked to speak with Besant in the back, and Besant agreed. Defendant, together with Mills and Besant, went to a room in the back of the house. Almost immediately, Stewart heard six gunshots that sounded like they were being fired from different guns. Evidence established that Besant had been shot ten times, and three of the bullets were from a .38-caliber firearm, but the remaining bullets were too damaged to be linked to any particular weapon. Eight spent .38-caliber shell casings were found in the backroom where Besant's body was discovered, along with a live bullet corresponding to a .38-caliber firearm. The evidence suggested that the .38-caliber firearm, which type of firearm typically has the capacity to fire five or six rounds,

2

must have been reloaded before being used to further riddle Besant with bullets. The police, however, never recovered a .38-caliber firearm. The backroom was described as follows by an investigating officer:

> I saw that the room was in complete disarray. The mattress had been askewed from the box springs, dresser drawers had been removed, there's just miscellaneous items spread out all through the room.

The officer also testified that there was a bloody shoeprint on top of a "pulled-out, upside down dresser drawer."

According to Stewart, after she heard the gunshots from the backroom, Mills reappeared and approached her, Anderson, and Leonard, pointing the gun at Anderson and pulling the trigger. The gun jammed, Anderson and Leonard began to struggle with Mills, and Stewart ran into the basement and hid underneath the basement steps. Stewart then heard footsteps inside the house and gunshots coming from outside the home. In response to the prosecutor querying her whether anyone then came down to the basement looking for her, Stewart stated:

> Yes, they came to the steps, but they didn't come all the way down. All I seen were the shoes and the pants. That was it. It never came all the way down. Then I heard one of them say we have to get out of here. So they ran out. I could hear them running out of the house.

A bloody shoe print was later found on the floor near the door going to the basement.

The police later found the dead bodies of Leonard and Anderson just outside the home. Leonard had been shot twice and Anderson three times, all with a .32-caliber weapon. Spent .32-caliber shell casings were found outside the house, along with a live .32-caliber bullet and a chain necklace. Subsequently, after Stewart identified defendant in a photographic array, Mills and defendant were arrested. Mills directed police to a location where, according to Mills, he had buried a gun used in the incident, and where he had hidden bloody clothes. At the location, police found a .32-caliber firearm, burnt jeans covered with blood, the burnt remnants of other clothing and boots, a black-hooded

sweatshirt, and $300. DNA from the jeans matched Besant's blood, and all of the .32-caliber bullets and spent shell casings found at the scene were determined to have been fired from the recovered .32-caliber gun. *Coleman*, 2008 WL 4649025 at *1-3.

## II. Standard of Review

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The Act details the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Because the petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's

4

adjudication of a petitioner's claims unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 521 *(quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, as stated above, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the United States Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
> . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court

5

to the facts of a prisoner's case." *Id.* at 409. Courts have defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Dorchy v. Jones*, 398 F.3d 783, 787-88 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003)(en banc).

### III. Discussion

**A. Claim # 1. The Insufficiency of the Evidence Claim.**

The petitioner alleges that there is insufficient evidence to support his convictions, claiming that the "meager circumstantial evidence" relied on by the prosecutor was "too weak, uncertain, and speculative." The petitioner argues that the evidence was insufficient to show that he was the principal or acted as an aider and abettor with respect to Besant's murder, especially considering the acquittals on the felony-firearm and felon in possession charges. The petitioner further contends that there was no evidence of a larceny, the underlying felony for purposes of the felony murder charges. The petitioner contends that the evidence, at best, establishes his mere presence at the crime scene. The petitioner also argues, for

6

these same reasons, that the evidence was insufficient to sustain the murder convictions as to Leonard and Anderson and the assault conviction with respect to Stewart.

In rejecting this argument, the Michigan Court of Appeals ruled that there was sufficient evidence at trial which would lead a rational trier of fact to conclude, at a minimum, that petitioner aided and abetted in Besant's murder. The Michigan Court of Appeals further held that there was sufficient evidence from which a rational trier of fact could conclude that the petitioner abetted in the murders of Leonard and Anderson and the assault upon Stewart. *Coleman,* 2008 WL 4649025, at * 3.

A habeas court reviews claims of insufficient evidence by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Additionally, in reviewing a state court's application of the Jackson standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer*, 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009) (*citing* 28 U.S.C. § 2254(d)(1)). This Court must also "give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002) (internal citations omitted). "A conviction may rest on circumstantial evidence and

7

a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence." *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002) (citation omitted). A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.* (citations omitted). A habeas court does not substitute its own judgment for that of the finder of fact. *See Dillard v. Prelesnik*, 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001). Finally, in making a determination whether the state court's application of the *Jackson* standard in resolving the petitioner's sufficiency of evidence claim was contrary to, or an unreasonable application of, Supreme Court precedent, this Court must afford the state court's findings of facts a presumption of correctness unless the petitioner can establish by clear and convincing evidence that the state court's factual determination was erroneous. *See Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002) (internal citations omitted).

Because, as explained below, a rational trier of fact could have found petitioner guilty beyond a reasonable doubt, and because the Michigan Court of Appeals rationally applied Michigan law to the facts, habeas relief is not warranted.

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

8

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003) (*citing to People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The petitioner first contends that there was insufficient evidence of an underlying predicate felony to convict the petitioner of felony murder. The Michigan Court of Appeals labeled the underlying felony in the first-degree felony murder charge as larceny or, at least, attempted larceny. *Coleman*, 2008 WL 4649025 at *2. As stated by the Michigan Court of Appeals, larceny requires the prosecution to prove "(1) the taking of someone else's property without consent, (2) movement of the property, (3) with intent to steal or permanently deprive the owner of the property, and proof that (4) the property was taken from the person or from the persons' immediate area of control or immediate presence." *Id.* (*citing People v. Perkins*, 262 Mich. App. 267, 271-72; 686 N.W. 2d 237 (2004)). The Michigan Court of Appeals stated that an attempt is sufficient under felony murder, and read an attempt under M.C.L.A. 750.92 as requiring the prosecutor to prove "(1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *Id.* (*citing People v. Thousand,* 465 Mich. 149, 164; 631 N.W. 2d 694 (2001)).

A rational trier of fact could have concluded that because the bedroom was ransacked and the victims were killed, that the money, which was later found with other evidence, was taken without consent. Further, because officers found the money buried elsewhere, a factfinder could have concluded that the money was

9

moved and that the assailants intended to steal or otherwise permanently deprive the victims of it. Also because the bedroom was ransacked, the victim was found shot there, and the money was found with other evidence, a rational trier of fact could have concluded that the money was taken from the victim's immediate area of control or immediate presence. A conviction may rest on circumstantial evidence, and this Court must accord a deferential review of state court sufficiency of the evidence decisions. A rational trier of fact could have found all four elements of larceny beyond a reasonable doubt and the Michigan Court of Appeals did not unreasonably apply Michigan law in determining that there was an underlying felony. *See e.g. Riley v. Berghuis,* 388 F. Supp. 2d 789, 800-01 (E.D. Mich. 2005); *rev'd on other grds,* 481 F. 3d 315 (6th Cir. 2007)( evidence was sufficient to sustain defendant's conviction for the crime of felony murder based on underlying felony of larceny in a building, where there was evidence that the victim's apartment had been ransacked and that the petitioner and his accomplice placed some of the victim's property in victim's car and ran away on foot when they could not start the car).

Even if the evidence was insufficient to conclude that a larceny had taken place, a rational trier of fact could have concluded that someone attempted to commit a larceny. Because a rational trier of fact could have concluded beyond a reasonable doubt that an attempt had taken place and because the Michigan Court of Appeals concluded that an attempt would suffice for the Michigan felony murder statute, the Michigan Court of Appeals did not unreasonably apply Michigan law in

10

determining that there was at least an attempted larceny to satisfy the felony murder statute.

The Michigan Court of Appeals further stated the elements of aiding and abetting:

> "To convict a defendant under an aiding and abetting theory pursuant to M.C.L. 767.39, the prosecutor must prove that (1) the crime charged was committed by the defendant or another person, (2) the defendant gave encouragement or performed acts that assisted in the commission of the crime, and (3) the defendant intended that the crime be committed or had knowledge that the principal intended its commission when the defendant gave aid and encouragement."
> *Coleman,* 2008 WL 4649025, * 2 (*citing People v. Robinson*, 475 Mich. 1, 6; 715 N.W. 2d 44 (2006)).

The Michigan court further stated that "[a]iding and abetting includes any and all forms of assistance . . . [and] the quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *Id.* (*citing People v. Lawton*, 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992)). The Michigan court qualified this statement by saying that "mere presence at the crime scene, even with knowledge that an offense is about to be committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *Id.* (*citing People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999)). But "[a]n actor's intent may be inferred from the facts and circumstances, and minimal circumstantial evidence is sufficient to show a defendant's state of mind." *Id.* (*citing People v. McRunels*, 237 Mich. App. 168, 181; 603 N.W. 2d 95 (1999)).

Under Michigan law, to convict a defendant of felony murder under an aiding

11

and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003) (citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

The evidence established that there were three people murdered in this case. One was shot eight times; the other two were shot between two and three times each. Because the victims were shot multiple times, a rational trier of fact could have concluded that they were killed intentionally. Under Michigan law, it does not matter that the petitioner did not shoot the victims himself, so long as the prosecutor proved that the petitioner engaged in larceny or attempted larceny while knowing that his accomplice was armed with a weapon.

A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003) (intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."); *See also Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*;*

*People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade,* 265 F. Supp. 2d at 858-59; *Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003) (petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually innocent of felony-murder, finding that the petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery). The petitioner's involvement in these offenses, while armed with a weapon and while knowing that his accomplice was armed with a weapon, was sufficient evidence from which a rational trier of fact could conclude that the petitioner had the requisite malice necessary to sustain his convictions for felony murder.

There was likewise sufficient evidence for a rational trier of fact to conclude that the petitioner abetted in the assault upon Evelyn Stewart. Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir. 1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). As the Michigan Court of Appeals indicated in its opinion, a rational trier of fact could have concluded that the petitioner aided and abetted Mills in the assault upon Stewart and entertained the

same intent to kill, in light of the fact that he set into motion this crime by participating in the initial shooting of Besant and later fleeing the scene with Mills. *Coleman,* 2008 WL 4649025, at * 4.

The petitioner is correct that a defendant's mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *Norris*, 236 Mich.at 419-20; *Fuller*, 662 F. 2d at 424. However, a claim of mere presence is not a "catch-all excuse" to defeat an inference of guilt beyond a reasonable doubt. In evaluating a "mere presence" defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. *See Long v. Stovall*, 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006) (citing *Duran v. Pepe*, 899 F. Supp. 839, 843 (D. Mass. 1995)). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

14

The petitioner conceded that an assault occurred. The petitioner's defense was that Mills had committed the offense and that the petitioner was merely a passive observer. The petitioner came to the home with Mills. Gun shots came from the back room very quickly after both Mills and the petitioner accompanied Besant into the back of the house. The back room was ransacked after the shooting. There were two guns used in the commission of the crime, and the witness testified to hearing the two men talking while she hid downstairs. The witness testified to hearing one of them talking out loud, stating that "we have to get out of here." Based on these facts, the factfinder could have concluded that the petitioner gave encouragement or otherwise assisted Mills during the murders and the assault with intent to murder.

Based on these facts, the factfinder could have concluded that the petitioner knew the crime was going to be committed or intended to help Mills commit the crime. A rational trier of fact could infer that the petitioner was armed with a weapon. The petitioner's possession of a weapon during the course of this attempted robbery would be sufficient to infer his active involvement in the crimes. *See United States v. Daniels,* 48 Fed. Appx. 409, 416 (3rd Cir. 2002). The petitioner's flight from the scene establishes his active involvement in these offenses, so as to defeat his mere presence argument. *See Meade,* 265 F. Supp. 2d at 858-59.

Moreover, common sense would indicate that the petitioner's accomplice would not have permitted a "noncontributing interloper" to remain with him inside of

15

this house while his "conspicuous criminal conduct continued unabated." *United States v. Batista-Polanco,* 927 F. 2d 14, 18 (1st Cir. 1991). A "factfinder may fairly infer....that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *Id.*

In light of the evidence presented in this case, the Michigan Court of Appeals' rejection of the petitioner's mere presence claim was not an unreasonable application of clearly established federal law, so as to entitle him to habeas relief. *See Long,* 450 F. Supp. 2d at 754.

Because a rational trier of fact could have found all of the elements of felony murder and assault with intent to commit murder and aiding and abetting beyond a reasonable doubt, the Michigan Court of Appeals's decision was not unreasonable. Therefore, the petitioner's habeas petition based on insufficiency of the evidence to convict him for felony murder and for assault with intent to murder is denied.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded that there was sufficient evidence to support all of the crimes the petitioner was convicted of. The Michigan Court of Appeals was not unreasonable in applying Michigan law to the facts of the case. The petitioner's claim for a writ of habeas corpus because there was insufficient evidence is DENIED.

**B. Claim # 2. The trial court's failure to grant the petitioner's motion for a directed verdict.**

The petitioner next contends that the trial court committed error by not granting his motion for a directed verdict after the prosecution's opening statement. "Such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991)). The United States Supreme Court stated that "'federal habeas corpus relief does not lie for errors of state law.'" *Id.* (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

In *King v. Trippett*, 27 Fed. App'x 506, 510 (6th Cir. 2001), the court dealt with a petitioner that alleged that the state court failed to enter a directed verdict in violation of state law. The federal court found that the state court's misapplication of state law in failing to grant the petitioner's motion for a directed verdict was not cognizable in a federal habeas corpus proceeding. *King*, 27 Fed. App'x at 510 (*citing Estelle*, 502 U.S. at 67-68.).

Petitioner's claim of state law error does not state a claim on which federal habeas relief may be granted by this Court. The Michigan Court of Appeals dealt with this issue on direct review, citing M.C.R. 6.419 as authority for the contention that the petitioner was not entitled to his motion for directed verdict.[1] Because this

---

[1] It is not clear whether a defendant in Michigan can seek a motion for a directed verdict based upon a prosecutor's deficient opening statements. *See Newman v. Metrish,* 492 F. Supp. 2d 721, 733 (E.D. Mich. 2007); *aff'd* 543 F. 3d 793 (6th Cir. 2008); *cert. den.* 130 S. Ct. 1134 (2010). M.C.R. 6.419 states that: "[A]fter the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs", a trial court may direct a verdict of acquittal if the evidence is insufficient as a matter of law. The Michigan Court of Appeals ruled in this case that based on their reading of M.C.R. 6.419, the earliest that a motion for directed verdict can be considered is after the presentation of the prosecution's

is an issue of state law interpretation by state courts, any error that the Michigan trial court and Michigan Court of Appeals may have committed when deciding a motion for directed verdict is not cognizable on federal habeas review. Accordingly, the petitioner's claim for habeas relief based upon failure to grant his motion for directed verdict is DENIED.

## IV. Conclusion

For the reasons discussed above, state court adjudication of the petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

---

case in *chief. Coleman,* 2008 WL 4649025, at * 4.

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484. The petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 30, 2010

I hereby certify that a copy of the foregoing document was served upon Jervon Coleman, Reg. No. 366723, Carson City Correctional Facility, 10522 Boyer Rd., Carson City, MI 48811 counsel of record on June 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager